IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ANDREEA OLTEANU,<br><br>        Plaintiff,<br><br>vs.<br><br>ERIC GONZALEZ; ANCA OLTEANU; LOUIS SCHNEIDER, ESQ.; ANGELA NICULESCU; CALIN NICULESCU; MERRILL LYNCH WEALTH MANAGEMENT; BANCA BRD; SOCIETE GENERALE S.A. AND SG AMERICA SECURITIES LLC; NAPA POLICE DEPARTMENT; CHRISTOPHER FORD; COSTIN NICULESCU; AND HORIA TANASESCU,<br><br>        Defendants. | CIV. NO. 23-00299 JMS-KJM<br><br>ORDER (1) DENYING PLAINTIFF'S REQUEST FOR ISSUANCE OF A TEMPORARY RESTRAINING ORDER, AND (2) TO SHOW CAUSE WHY THIS CASE SHOULD NOT BE DISMISSED OR TRANSFERRED FOR IMPROPER VENUE |

**ORDER (1) DENYING PLAINTIFF'S REQUEST FOR ISSUANCE OF A TEMPORARY RESTRAINING ORDER, AND (2) TO SHOW CAUSE WHY THIS CASE SHOULD NOT BE DISMISSED OR TRANSFERRED FOR IMPROPER VENUE**

**I. INTRODUCTION AND BACKGROUND**

On July 19, 2023, pro se Plaintiff Andreea Olteanu ("Plaintiff") filed a

Complaint, ECF No. 1, and on July 25, 2023, an Amended Complaint against

Defendants Eric Gonzales, Anca Olteanu, Louis Schneider, Esq., Angela

Niculescu, Calin Niculescu, Merrill Lynch Wealth Management ("Merrill Lynch"),

Banca BRD, Societe Generale S.A. and SG America Securities LLC, Napa Police Department, Christopher Ford, Costin Niculescu, and Horia Tanasescu.  ECF No. 9.[1]  Plaintiff's claims are hard to discern.  And since she filed the Amended Complaint, she has—without permission—serially filed five additional sets of documents consisting of declarations, captioned photographs, emails, letters, news articles, financial statements, and untranslated documents in support of her claims.

From what the court can glean, Plaintiff alleges that she is the only child of Michael and Anca Olteanu, a successor trustee of the Olteanu Trust, and an exemption trustee of an "Exemption Trust" "created as an irrevocable sub-trust under the Olteanu Trust" upon Michael Olteanu's death on May 31, 2018.  *Id*. at PageID.69; *see also* ECF No. 9-5 at PageID.86.  Plaintiff alleges that her mother, Anca Olteanu, an "82-year old, legally blind, deaf . . . victim of Early Dementia" has, from May 2018 until present, colluded with certain Defendants to embezzle over $2 million in Olteanu Trust assets into her personal accounts at banks in Bucharest, New York, and Napa.  ECF No. 9 at PageID.69.  Plaintiff also alleges financial elder abuse, *id*. at PageID.75, because her mother has been acting as a "mule," "receiving monthly cash transfers of up to $30,000 through Western Union from Romania" and "depositing them into Merrill Lynch accounts."  *Id*. at

---

[1]  On August 16, 2023, Plaintiff filed an "Amended Defendant List" seeking to add Defendants Christopher Ford, Esq. (duplicative), Anthony Smith, Esq., Bank of America, Sunny Care Home, and Anca Niculescu.  ECF No. 35.

2

PageID.72–73.  These "money laundering" transfers allegedly were organized by Calin and Angela Niculescu who are "well-known Organized Crime figures within the Romanian community in Bucharest and California who were posing as new-found close friends of Anca Olteanu."  *Id*. at PageID.72.

Plaintiff also alleges that Anca Olteanu introduced Calin Niculescu to Plaintiff's now-deceased husband, Mark Porcelli, to "coordinate [Plaintiff's] arrest in Nevada," which was being handled by Louis Schneider, the Henderson Police Department, Christopher Ford, and Anthony Smith, to "silence" her.  *Id*. at PageID.74.  Plaintiff alleges that the murder of Mark Porcelli was ordered by Angela and Costin Niculescu (along with Schneider, Ford, and Smith) because Mark Porcelli "knew that they were planning to have [Plaintiff] falsely arrested and killed while in custody."  *Id*.

Plaintiff asserts claims of "RICO fraud, embezzlement, wire fraud, mail fraud, grand larceny, breach of fiduciary duty, civil conspiracy for criminal prosecution, interference with contract," and violations of 18 U.S.C. § 1514 (prohibiting harassment of a victim or witness in a federal criminal case), the Federal Reserve Act, and of her "section 1986" rights for Defendant Napa Police Department's failure to investigate or seize financial records from Defendants Eric Gonzales and Merrill Lynch.  *Id*. at PageID.75.

3

In the Amended Complaint, Plaintiff requests equitable relief in the form of a preliminary injunction against Anca Olteanu to suspend her indefinitely as trustee of the Olteanu Trust and to appoint a receiver who would be ordered to prepare an accounting. *Id*. at PageID.76. Plaintiff also requests that the court freeze and subpoena all of Anca Olteanu's accounts at Merrill Lynch, Banca BRD, and Societe Generale S.A. *Id*. Plaintiff further requests a temporary restraining order ("TRO") against Anca Olteanu, Eric Gonzales, Calin Niculescu, and Angela Niculescu for their "persistent and ongoing threats" to her "safety, well-being, and reputation." *Id*.

The court decides Plaintiff's Request for TRO without a hearing under Local Rule 7.1(c). Based on the following, Plaintiff's Request is DENIED. Furthermore, the Amended Complaint appears to show that the court does not have personal jurisdiction over any Defendant and that venue is improper in this district. Accordingly, the court also ORDERS Plaintiff to SHOW CAUSE in writing why this matter should not be dismissed or transferred for improper venue.

## II.  STANDARD OF REVIEW

A court may issue a TRO without written or oral notice to the adverse party only if the party requesting the relief provides an affidavit or verified complaint providing specific facts that "clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse

party can be heard in opposition." Fed. R. Civ. P. 65(b)(1)(A). In addition, the movant or his attorney must certify in writing "any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1)(B).

Even if such notice is provided, a TRO may issue only if a movant meets their burden under well-established factors. The standard for issuing a temporary restraining order is identical to the standard for issuing a preliminary injunction. *See, e.g.*, *Hawaii ex rel. Anzai v. Gannett Pac. Corp.*, 99 F. Supp. 2d 1241, 1247 (D. Haw. 1999), *aff'd sub nom*. *State of Hawaii v. Gannett Pac. Corp.*, 203 F.3d 832 (9th Cir. 1999); *cf. Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001) (observing that an analysis of a preliminary injunction is "substantially identical" to an analysis of a temporary restraining order).

A preliminary injunction is an extraordinary and drastic remedy never awarded as of right. *Munaf v. Geren*, 553 U.S. 674, 689−90 (2008). A party "seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *accord Sierra Forest Legacy v. Rey*, 577 F.3d 1015, 1021 (9th Cir. 2009). "That is, 'serious questions going to the merits' and a balance of hardships that tips

sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the [movant] also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). *Winter* emphasizes that movants seeking preliminary relief must demonstrate that "irreparable injury is *likely* in the absence of an injunction." 555 U.S. at 22; *see also Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009).

## III.  DISCUSSION

**A.    Plaintiff's Request for Issuance of a TRO Without Notice**

Plaintiff fails to meet the requirements for granting a TRO without notice. First, Plaintiff has not demonstrated compliance with the requirements of Federal Rules of Civil Procedure 65(b)(1)(A) and (B). As to the first requirement, she provided neither an affidavit nor a verified complaint with specific facts establishing that "immediate and irreparable injury, loss, or damage will result" to him. *See* Fed. R. Civ. P. 65(b)(1)(A) (requiring "specific facts in an affidavit or a verified complaint"). As to the second requirement, she has not "certifie[d] in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1)(B). Nothing in the record indicates that Plaintiff has served the Request for TRO (much less completed service of the Amended Complaint). Accordingly, Plaintiff's Request for TRO is DENIED.

Moreover, even if Defendants had sufficient notice, Plaintiff's Request for TRO fails because she has not demonstrated a likelihood of success on the merits. Even liberally construing Plaintiff's filings, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987), there is no evidence from which the court can discern Plaintiff's claims of RICO fraud, embezzlement, wire fraud, mail fraud, grand larceny, breach of fiduciary duty, civil conspiracy for criminal prosecution, interference with contract, violations of 18 U.S.C. § 1514, the Federal Reserve Act, or rights under "section 1986." For example, Plaintiff does not provide the court a copy of the Olteanu Trust to support the allegation that she is a beneficiary of such trust. And Plaintiff has not satisfied her burden to show that "irreparable injury is likely in the absence of an injunction." *Winter*, 555 U.S. at 22. A party claiming irreparable harm must establish that remedies available at law, such as monetary damages, are inadequate to compensate them for their harm. *See Herb Reed Enter., LLC v. Fla. Ent. Mgmt., Inc.*, 736 F. 3d 1239, 1249–50 (9th Cir. 2013); *see also eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006) (stating that a harm is typically irreparable where "remedies available at law, such as monetary damages, are inadequate to compensate for that injury").

**B.     Improper Venue**

Notwithstanding Plaintiff's failure to satisfy the requirements for the issuance of a TRO, she has not provided facts to support proper venue. In general, civil lawsuits may be brought in—

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391. Although a defendant may waive an objection to venue, the district court may raise the issue of defective venue sua sponte prior to a responsive pleading to the complaint. *See Costlow v. Weeks*, 790 F.2d 1486, 1488 (9th Cir. 1986); *see also Wash. Public Utils. Grp. v. U.S. Dist. Court for the W. Dist. of Wash.*, 843 F.2d 319, 326 (9th Cir. 1987) (noting that petitioners "failed to demonstrate that a sua sponte order to change venue would be a clear error as a matter of law."); *Scaperotta v. Rhue*, 2020 WL 7379075, at *2 (D. Haw. Dec. 15, 2020) ("Venue may be raised sua sponte when the defendant has not filed a responsive pleading and the time for doing so has not run."). And under 28 U.S.C.

§ 1406(a), a district court finding improper venue "shall dismiss, or if it be in the interest of justice, transfer such case to any district . . . in which it could have been brought."

Plaintiff alleges that she has been a resident of Hawaii since March 2022 and individual "Defendants are located in Bucharest, Romania, Clark County, Nevada, and Northern California. The banks are located in Bucharest, Romania, New York, NY, and Napa, California. The [Michael & Anca] Olteanu Trust at the center of the Cause of Action is a Nevada Trust."[2]  ECF No. 9 at PageID.70. Based on the record before the court, no Defendant resides in this district; Plaintiff's claims arise solely out of conduct that took place in California, Nevada, New York, and Romania, not Hawaii; and the trust assets at issue are not currently and never have been in this district. It thus appears that venue is improper in this district, and this case may be brought in a district other than the District of Hawaii.

## IV.  CONCLUSION

Based on the foregoing, the court DENIES Plaintiff's Request for TRO, ECF No. 9. Furthermore, the court ORDERS Plaintiff to SHOW CAUSE in writing by **September 15, 2023**, why this case should not be dismissed or transferred for improper venue under 28 U.S.C. § 1406(a). Further, Plaintiff is

---

[2] However, a June 9, 2022 notice to Defendant Anca Olteanu from Plaintiff's trust and estate attorney at the time indicates that "[t]he Olteanu Trust 'shall in all respects be administered by the laws of the State of California.'" ECF No. 9-5 at PageID.87.

required to address where proper venue would lie if the court does decide to transfer venue—that is, where the case should more properly be brought. Failure to respond to the Order to Show Cause by **September 15, 2023**, may result in dismissal of the action without prejudice.

       IT IS SO ORDERED.

       DATED: Honolulu, Hawaii, August 29, 2023.



      /s/ J. Michael Seabright
      J. Michael Seabright
      United States District Judge

*Olteanu v. Gonzales, et al.*, Civ. No. 23-00299 JMS-KJM, Order (1) Denying Plaintiff's Request For Issuance of a Temporary Restraining Order, and (2) to Show Cause Why This Case Should Not Be Dismissed or Transferred for Improper Venue